IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID WI #571826, | ) |
| | ) |
| Petitioner, | ) |
| | ) NO. 3:19-cv-00605 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| RUSSELL WASHBURN, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

David Wi faced a collection of charges in state court that included first-degree murder. Wi's counsel advised him that he may receive the death penalty if convicted at trial. Fearing a death sentence, Wi pleaded guilty in exchange for a sentence of life plus 25 years' imprisonment. Wi has since argued that his fear was unfounded because the prosecution had not filed a notice of intent to seek the death penalty in his case. Wi asserts that the hollow threat of the death penalty renders his plea invalid and his counsel's advice ineffective. Wi unsuccessfully sought post-conviction relief on these bases in state court, and he now comes to federal court through a pro se habeas corpus petition under 28 U.S.C. § 2254. Because the propriety of the state court's rejection of Wi's claims is not beyond fair-minded disagreement, his federal habeas petition will be denied.

**I.      Background**

An indictment charged Wi with twelve offenses: first-degree felony murder (plus three attempt counts and one conspiracy count), first-degree premeditated murder (plus three attempt counts and one conspiracy count), aggravated burglary, and aggravated assault. (Doc. No. 8-1 at 5–9.) Wi entered a negotiated plea agreement in which he pleaded guilty to six offenses: felony murder, attempted felony murder, attempted premeditated murder, conspiracy to commit

premeditated murder, aggravated burglary, and aggravated assault. (*Id.* at 32–39.) In exchange for Wi's plea, the prosecution agreed to dismiss the other six charges, and Wi received a total effective sentence of life plus 25 years' imprisonment. (*Id.* at 33, 36.)

The prosecution provided a factual basis for the plea, summarized by the Tennessee Court of Criminal Appeals (TCCA) as follows:

> As the factual basis of the plea, the State offered an October 4, 2015 shooting in Montgomery County where Brandon Jiminez and a two-year-old minor male victim, the son of [Wi's] wife, were shot. On this particular day, [Wi's] wife, [Wi's] daughter, [Wi's] mother-in-law, and the minor male victim were at the home of Mr. Jiminez. Mr. Jiminez answered a knock on the door of his apartment, and a man greeted him asking for jumper cables. When Mr. Jiminez declined the man's request, the man pulled out a gun and began firing. Mr. Jiminez fell to the floor, and the man walked past him and fired several shots as he went down the hallway, including firing shots into the room where [Wi's] wife and daughter were hiding. As the man was leaving, the minor male victim began to cry. Hearing this cry, the man walked deeper into the home and fired more shots. Mr. Jiminez was seriously injured and transported via life flight to Vanderbilt Hospital, and the minor male victim died as a result of a gunshot to the back of the head.
>
> During his interview at the hospital, Mr. Jiminez recalled seeing a red or burgundy Impala on the evening of the shooting, and he recalled that the man who committed the shooting had come by the apartment the day before to ask for directions. Bullets from the shooting matched a pistol recovered from a vehicle owned by Zachary Alexander, and DNA analysis revealed that blood from the scene, which had not matched any of the victims, matched Mr. Alexander. Phone records revealed that Mr. Alexander and [Wi] had communicated before and after the shooting, and a field book recovered from Mr. Alexander's vehicle contained pages labeled "Wi's plan." The plan contained notes about life insurance, the need for a body, and the date on which the crime was to be committed, October 4th. A different page contained a hand drawn map labeled "Wi's crib."
>
> While in jail, [Wi] wrote a letter to another inmate describing the crime and detailing his motive. In the jail letter, [Wi] wrote the following:
>
>> First of all I never asked him to kill [the minor male victim]. He was only supposed to take out my ole lady, Alicia [and] her boyfriend if he got in the way. I didn't want anyone else in the house to die. Not even Rachel[, Alicia's mother,] because I didn't want [the minor male victim] to go into foster care. But what I think happen was, he knew I have life insurance on [the minor male victim], so after he shot the boyfriend, he couldn't find anyone else but the boy. He

> couldn't find Alicia, and he wanted to get paid so he shot [the minor
> male victim]. When he told me he shot him, I flipped out [and] asked
> him why. He just kept saying IDK, IDK, IDK, it was an accident.
> By the way, I didn't go in the house. I waited in the car. And he
> never saw Rachel. She hid in the bathroom the whole time. . . .

*Wi v. State*, No. M201800671CCAR3PC, 2019 WL 1556244, at *1 (Tenn. Crim. App. Apr. 10, 2019) (footnote omitted).

At the plea hearing, Wi testified that he did not disagree with this summary of the facts in any material respect. (Doc. No. 8-3 at 38.) The court accepted the plea agreement and imposed judgment accordingly. (*Id.* at 39–41; Doc. No. 8-1 at 40–45.)

Wi filed a pro se post-conviction petition (Doc. No. 8-1 at 46–53), followed by an amended petition. (*Id.* at 62–70.) The court held an evidentiary hearing (Doc. No. 8-2) and denied relief. (Doc. No. 8-1 at 74–87.) The TCCA affirmed, and the Tennessee Supreme Court denied Wi's application for permission to appeal.[1] *Wi*, 2019 WL 1556244, *perm. app. denied* June 19, 2019.

Wi then filed this pro se habeas petition in federal court. (Doc. No. 1-1.) Respondent filed an Answer (Doc. No. 9), and Wi filed a Reply. (Doc. No. 21.) Wi claims that his plea was unknowing and involuntary and that his counsel induced him to plead guilty by "threatening" him with the death penalty. (Doc. No. 1-1 at 5, 7.)

## II. Legal Standard

Federal habeas relief for state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). AEDPA establishes a demanding standard for granting federal relief on claims "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Under AEDPA, such a claim cannot be the basis for federal

---

[1] The TCCA reversed and dismissed Wi's conviction for "attempted felony murder," as it was not a cognizable crime under Tennessee law, without disturbing Wi's total effective sentence. *Wi*, 2019 WL 1556244, at *8. Wi does not challenge this aspect of the TCCA's ruling in his federal habeas petition.

3

relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"; instead, the federal court must find that the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State court factual determinations are unreasonable only "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable

4

determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

### III. Analysis

As noted above, Wi brings two claims: that his plea was unknowing and involuntary, and that his counsel induced him to plead guilty by advising him that he may receive the death penalty if he proceeded to trial. The TCCA rejected these claims on post-conviction appeal, and the Court will address each claim in turn.

#### A. Validity of Guilty Plea

The federal standard governing a challenge to the knowing and voluntary nature of a guilty plea is set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969), and its progeny. *See King v. Berghuis*, 744 F.3d 961, 965 (6th Cir. 2014) (citing *Boykin*, 395 U.S. at 242–44) (explaining that a *Boykin* claim requires a court to determine "whether the record demonstrates that the defendant's plea was entered into knowingly, intelligently, and voluntarily"). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008). The defendant must "understand the nature of the charges against him and the consequences of pleading guilty, including the possible punishments and loss of other rights." *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013) (collecting cases).

Before rejecting Wi's claim on the merits, the TCCA properly identified this governing federal precedent, *Wi*, 2019 WL 1556244, at *7 (citing *Boykin*, 395 U.S. at 243; *Alford*, 400 U.S. at 31), as well as a state court case that incorporates relevant Supreme Court precedent. *Id.* (citing

5

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993)); *Blankenship*, 858 S.W.2d at 903 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983)) (recognizing that the governing standard for determining whether a guilty plea is knowing and voluntary "is a question of federal law"). And Wi does not attempt to argue that the TCCA confronted facts materially indistinguishable from a Supreme Court decision before arriving at a result different from that decision.[2] The TCCA's ruling, therefore, was not contrary to clearly established federal law. *See Atkins v. Crowell*, 945 F.3d 476, 478 (6th Cir. 2019) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)) ("A state court's decision is 'contrary to' a Supreme Court holding" under Section 2254(d)(1) "only if 'the state court applies a rule different from the governing law set forth in' the Supreme Court's decision, 'or if it decides a case differently than [the] Court has done on a set of materially indistinguishable facts.'").

The TCCA's ruling also did not "involve[] an unreasonable application of[] clearly established Federal law," *see* 28 U.S.C. § 2254(d)(1), and it was not "based on an unreasonable determination of the facts." *See id.* § 2254(d)(2). The TCCA ruled:

> [Wi's] intelligence is apparent. He is a high school graduate who attended a university for a short period of time before joining the military. While in the military, [Wi] served as a supply specialist who managed the equipment and property books for his outfit. He had no experience with the judicial system before this case, but he was represented by a well-seasoned attorney who adequately communicated with him about his options. Ultimately, it is obvious that [Wi] pled guilty to avoid the death penalty. Even though receiving the death penalty may not have been an inevitable outcome, as [Wi] had assumed, it was still a possibility. The prosecutor had the authority to file a death notice and considered [Wi's] case to be a "death case." The trial court thoroughly reviewed [Wi's] guilty plea with him, and [Wi] affirmed at the guilty plea hearing that he had read and understood the plea agreement, which informed [Wi] of all of his rights including the right to remain silent. [Wi] has failed to overcome the "strong presumption of verity"

---

[2] Moreover, the Court does not perceive how any such argument could succeed. *Boykin*, for example, is materially distinguishable from Wi's case because the *Boykin* record showed that the trial judge asked Boykin no questions concerning his guilty pleas, 395 U.S. at 239, while the record here shows that the trial judge asked Wi a series of questions regarding the voluntary and knowing nature of his guilty pleas. (*See* Doc. No. 8-3 at 27–28, 35–39.)

6

> afforded to his declarations at the guilty plea hearing, and we conclude that his guilty plea was made knowingly and voluntarily.

*Wi*, 2019 WL 1556244, at *7.

The record supports this ruling. When Wi pleaded guilty, he testified that he understood the nature of the six charges to which he was pleading guilty, the agreed terms of imprisonment for his guilty pleas to felony murder (life) and attempted felony murder (25 years), and the range of punishment for his other offenses of conviction. (Doc. No. 8-3 at 35–38.) Wi also testified that he read and understood the signed plea agreement (*id.* at 28), which clearly laid out Wi's charged offenses, the offenses to which he was pleading guilty, his sentencing exposure, the agreed sentence, and the rights he was giving up by pleading guilty. (Doc. No. 8-1 at 33–37.) Through this agreement, Wi agreed that "[n]o one has made any threat or tried in any way to force [him] to plead guilty." (*Id.* at 37–38.) The court asked Wi if he was guilty of the six offenses of conviction, and he responded, "Yes, sir." (*Id.* at 38–39.) As the TCCA rightly noted, Wi's plea hearing testimony carries "a strong presumption of truthfulness." *Morrell v. Burton*, No. 20-1096, 2020 WL 8415075, at *2 (6th Cir. Sept. 22, 2020) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)) ("[W]here the court has scrupulously followed the required procedure [for a plea colloquy], the defendant is bound by his statements in response to that court's inquiry.").

Additionally, the TCCA reasonably concluded that Wi pleaded guilty to avoid the possibility of the death penalty—a possibility that was still very much on the table as of the time of the plea, even though a death-penalty notice had not yet been filed in his case. At the time of Wi's plea in 2016, the Tennessee Supreme Court had clearly held that state prosecutors could "make a plea offer of a lesser penalty than death and then may pursue the death penalty if the defendant rejects the plea offer." *State v. Hester*, 324 S.W.3d 1, 20 (Tenn. 2010) (citing *State v.*

7

*Mann*, 959 S.W.2d 503, 509–11 (Tenn. 1997)) (footnote omitted). As shown by text messages between trial counsel and the state prosecutor, the prosecutor believed Wi's case to be a "death case," and the prosecutor had "been given approval to file the notice." (Doc. No. 8-8 at 47 (text messages); Doc. No. 8-2 at 72–74 (trial counsel testimony); *id.* at 96–97 (prosecutor testimony).) Indeed, the prosecutor testified at the evidentiary hearing that she had approval to file the death notice, that she got closer to filing the notice as time passed, and that she had not yet filed it because she was attempting to reach a plea agreement with Wi that would spare the victim's family the hardship of protracted litigation. (*Id.* at 95–98, 106.) The validity of Wi's concern at the time of the plea about the possibility of the death penalty, therefore, is substantiated by the record. And "a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty." *Brady v. United States*, 397 U.S. 742, 755 (1970) (footnote omitted).

In the end, "[a] state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence." *Wright v. Lafler*, 247 F. App'x 701, 705 (6th Cir. 2007) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)). Wi has not presented evidence to rebut the TCCA's finding that he entered a valid guilty plea. This Court, accordingly, defers to the state court's resolution of Wi's challenge to the knowing and voluntary nature of his plea. This claim will be denied.

      B.    <u>Ineffective Assistance of Counsel</u>

The federal law governing the adequacy of a criminal defendant's representation is defined in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Premo v. Moore*, 562 U.S. 115, 121 (2011) ("The applicable federal law consists of the rules for determining when a criminal defendant has received inadequate representation as defined in *Strickland*."). The TCCA correctly identified this

8

standard before rejecting Wi's claim on the merits, *Wi*, 2019 WL 1556244, at *6. For this reason, and because Wi does not argue that the TCCA decided his case differently than the Supreme Court has on a set of materially indistinguishable facts, the TCCA's ruling was not "contrary to" clearly established federal law. *See Atkins*, 945 F.3d at 478 (setting forth the standard for the "contrary to" prong of Section 2254(d)(1)). Under *Strickland*, a petitioner must show (1) deficient performance by counsel and (2) prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*, 466 U.S. at 687). Counsel's performance is deficient where it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). When a petitioner asserts that "ineffective assistance led to the improvident acceptance of a guilty plea," *Strickland*'s prejudice prong requires him "to show 'that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The Supreme Court has explained the heavy burden a petitioner bears in these circumstances:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

9

Further, when (as here) a petitioner raises an exhausted claim of ineffective assistance in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

Here, Wi asserts that trial counsel was ineffective by "threatening" Wi with the death penalty when the prosecutor had not filed a death penalty notice. (Doc. No. 1-1 at 7.) He presented the substance of this claim to the TCCA on post-conviction appeal. *See Wi*, 2019 WL 1556244, *5–6 (arguing that "trial counsel did not adequately communicate with [Wi] about his situation and the available options," with a focus on "the State's death penalty notice, or lack thereof"). The TCCA rejected it as follows:

> Trial counsel documented nine different times that he met with [Wi] either in person or via video conference. Additionally, the record contains four letters sent by trial counsel to [Wi] in order to keep him apprised of the status of his case. While trial counsel did not explain every element that the State was required to prove or the lesser-included offenses of the crimes charged, he did discuss the possible punishments for each of [Wi]'s indicted offenses, which was the main focus of the plea negotiations. Trial counsel provided [Wi] with a copy of his plea petition weeks in advance of his hearing, but he did not go over the plea petition in a line-by-line fashion before the hearing. Nevertheless, [Wi] posed no questions to trial counsel about the plea petition. The biggest issue with regard to their communication appears to surround the State's death penalty notice, or lack thereof. [Wi] knew that the State had not filed a death penalty notice, but he did not know that notice was required before the State could pursue the death penalty. [Wi] assumed that if he were convicted at trial, then he would receive the death penalty. Indeed, trial counsel informed [Wi] that he "may" face the death penalty, but at the post-conviction hearing, trial counsel carefully explained that he used the word "may" rather than "would." It is not deficient performance when an attorney is not informed of and thus does not dispel a client's assumptions.[3] Therefore, [Wi] did not receive ineffective assistance of counsel.

---

[3] The Court understands this sentence as referring to assumptions that are unwarranted, as the TCCA's analysis reflects that it viewed Wi's assumption that he would automatically receive the death penalty upon a finding of guilt at trial to be unwarranted.

10

*Id.* at *6 (footnote added).

This ruling was not an "unreasonable application" of federal law. 28 U.S.C. § 2254(d)(1). Additionally, it was not "based on an unreasonable determination of the facts." *See id.* § 2254(d)(2). At the evidentiary hearing on his state post-conviction petition, Wi testified that discovery of his inculpatory jail letter prompted discussions of the death penalty with trial counsel. (Doc. No. 8-2 at 23.) At that point, Wi "was pretty much willing to do anything to not get the death penalty." (*Id.* at 24.) Wi and trial counsel, however, gave differing testimony on how counsel explained Wi's exposure to the death penalty. Wi testified that counsel told him that he would "probably" get the death penalty if convicted at trial (*id.* at 45), and Wi assumed that a sentence of death upon a finding of guilt was a foregone conclusion. (*Id.* at 23–24.) Counsel, on the other hand, was asked whether he told Wi that Wi was facing the death penalty, and counsel responded: "No. There's a big difference between would and may. Anytime that discussion came up, is it a possibility[?] [Y]es. Would it? No. Did I have indications that the State was thinking that way? Yes." (*Id.* at 64.) The TCCA credited counsel's testimony on this subject (that counsel said Wi "may" get the death penalty) over Wi's testimony (that counsel said Wi "probably" would get the death penalty).

A federal habeas court "may not lightly ignore" a state court's "credibility findings; they are entitled to 'great deference' and 'must be sustained unless [they are] clearly erroneous,' particularly in the context of AEDPA-limited habeas review." *Howell v. Hodge*, 710 F.3d 381, 386 (6th Cir. 2013) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam)). Wi has not demonstrated that the credibility finding in favor of counsel's explanation was clearly erroneous. And again, the text messages between counsel and the prosecutor are contemporaneous evidence supporting counsel's belief that ultimately Wi may have faced the death penalty. (*See* Doc. No. 8-

11

8 at 47 (stating prosecutor's belief that Wi's case was a "death case" and that the prosecutor had "been given approval to file the notice").) Wi himself testified at the evidentiary hearing that counsel did not tell him he had to plead guilty, but rather simply advised Wi that pleading guilty "was the better option to take." (Doc. No. 8-2 at 25.) Accordingly, the TCCA's rejection of this claim was not unreasonable, and Wi is not entitled to habeas relief on his claim that was counsel was ineffective for "threatening" him with the death penalty.

### C. Request for Evidentiary Hearing

As a component of his request for habeas relief, Wi asks the Court to hold an evidentiary hearing where would be represented by counsel. (Doc. No. 1 at 7; Doc. No. 21 at 8.) The Court would be required to appoint counsel for Wi if it granted him a hearing. *See* Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"). But because Wi's claims were both adjudicated on the merits in state court, this Court's review is "based solely on the state-court record." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (citing *Pinholster*, 563 U.S. at 180); *see also Mitchell v. Genovese*, 974 F.3d 638, 650 (6th Cir. 2020) ("[U]nder the AEDPA version of § 2254(d), a federal habeas tribunal's review of the state court's constitutional analysis is limited to the record before the state court." (citing *Pinholster*, 563 U.S. at 180–81)).

## IV. Conclusion

For these reasons, Wi is not entitled to relief under Section 2254, and this case will be dismissed. Because this is a "final order adverse to" Wi, the Court must grant or deny a certificate of appealability (COA). Habeas Rule 11(a). A COA requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

12

Case 3:19-cv-00605   Document 22   Filed 09/27/22   Page 12 of 13 PageID #: 620

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Wi has not satisfied this standard. As indicated above throughout the Court's analysis, the (lack of) validity of his claims under Section 2254 is not a close call, and so jurists of reason could not disagree with the Court's conclusions thereon. And there is nothing to suggest that the issues—which involve an obvious and straightforward application of the standard of 28 U.S.C. § 2254(d)—deserve further procession (in a higher tribunal). Accordingly, the Court will deny a COA.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE